UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| GAYLIN ROSE, | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| BIRCH TREE HOLDINGS, LLC, | ) |
| JOSHUA AYRES, | ) Case No. 2:18-cv-00197-JTM-JEM |
| TROY HELDERMAN, | ) |
| DAMIEN DAVIS, | ) |
| JERREL C. MCDONALD, SR., | ) |
| DANIEL TRAVIS, | ) |
| STACEY PHILLIPS, | ) |
| | ) |
| Defendants. | ) |

## DEFENDANT JOSHUA AYRES MOTION TO COMPEL STATE FIRE MARSHAL AND INDIANA STATE POLICE TO RESPOND TO NON-PARTY REQUEST FOR PRODUCTION

Defendant Joshua Ayres, pursuant to Fed. R. Civ. P. 37(a), for his Motion to Compel against non-party Indiana State Fire Marshal and non-party Indiana State Police, states as follows:

### Introduction

In a case alleging Defendants' negligence caused the deaths of Plaintiff's children in a tragic house fire, the Agencies who investigated cause and origin of the fire, and have identified suspects, are refusing to produce relevant information. Despite having agreed to a protective order in contemplation of such a production, the Agencies reversed course and are unjustifiably obstructing Defendants' discovery

efforts. After repeated attempts at resolving this dispute, the Court's intervention is now required.

<u>Background</u>

1.     On August 23, 2018, Ayres and Defendant Birch Tree Holdings, LLC ("Birch Tree"),[1] served on non-party Indiana State Fire Marshal ("Fire Marshal") a Subpoena to Produce Documents and corresponding Request for Production of Documents (the "Fire Marshal Request"). On ___, 2018, Ayres and Birch Tree served on non-party Indiana State Police ("ISP", and collectively with the Fire Marshal, the "Agencies") a Subpoena to Produce Documents and corresponding Request for Production of Documents (the "ISP Request", and collectively with the Fire Marshal Request, the "Requests"). The Requests seek the Agencies' investigative files regarding the fire from which Plaintiff's claims arise. Accurate copies of the Requests are attached as Exhibit A.

2.     On October 2, 2018, ISP responded to the ISP Request, producing several records and, on the purported basis of law enforcement investigatory privilege, redacted some and withheld from production many others. (Exhibit B, p. 1.)

3.     The Fire Marshal did not timely respond to the Fire Marshal Request.

---

[1] At the time, the law firm of Hunt Suedhoff Kalamaros LLP represented both Ayres and Birch Tree Holdings. The undersigned now represent Ayres, while Hunt Suedhoff Kalamaros LLP continues to represent Birch Tree Holdings.

4.     On March 3, 2020, Ayres sent correspondence to the Fire Marshal, identifying that its response to the Request was long overdue and requesting a response by March 17, 2020. (Exhibit C, p. 1.)

5.     On March 25, 2020, having received no response from the Fire Marshal, Ayres sent additional correspondence to the Fire Marshal. Ayres asked that the Fire Marshal respond to the Request by April 8, 2020. (Exhibit C, p. 7).

6.     On April 10, 2020, counsel for Ayres sent correspondence to ISP, attempting to resolve deficiencies in its response to the ISP Request. (Exhibit D, pp 7-9.)

7.     On May 1, 2020, having received on response from the Fire Marshal, Ayres filed a Motion to Compel State Fire Marshal to Respond to Non-Party Request for Production (the "First Motion") (doc. 107).

8.     On May 6, 2020, the Deputy General Counsel of the Indiana Department of Homeland Security, as counsel for the Fire Marshal, contacted counsel for Ayres regarding the Frist Motion and the Fire Marshal Request and requested 30 days to evaluate the Fire Marshal Request and attempt to  informally resolve the discovery dispute. (*See* Exhibit E, p. 32.) Ayres agreed.

9.     On May 15, 2020, ISP sent correspondence to counsel for Ayres, stating ISP was "able to remove some of the original redactions, and have limited the non-disclosed material to that which is directly pertinent to the ongoing investigation." (Exhibit D, p. 6.) ISP produced an updated police report.

10. On June 12, 2020, the Fire Marshal served its response to the Fire Marshal Request. (Exhibit F.) On the basis of the law enforcement investigatory privilege, the Fire Marshal redacted many produced documents and withheld from production several others. (*See* Exhibit F, p. 2.) But, despite its objection, and that it redacted several documents and withheld from production many more, it did not produce a privilege log.

11. On June 18, 2020, counsel for Ayres sent correspondence to Parvinder K. Nijar, Deputy Attorney General of the Office of Indiana Attorney General, counsel for the Fire Marshal, attempting to resolve deficiencies in the Fire Marshal's response to the Fire Marshal Request. Counsel for Ayres requested the Fire Marshal produce a privilege log. Moreover, counsel for Ayres addressed the lack of merit of the Fire Marshal's broad invocation of the law enforcement investigatory privilege. Accordingly, counsel for Ayres requested the Fire Marshal supplement its response. (Exhibit E, pp. 21-22.)

12. Although the Fire Marshal had not yet fully responded to the Fire Marshal Request, on June 22, 2020, because the Court had asked for an update regarding the First Motion by a date certain, Ayres filed a Notice of Withdrawal of the First Motion, stating he reserved "his right to file a renewed motion to compel against the Fire Marshal, as Ayres believes the Fire Marshal's response to the Non-Party Request for Production is deficient." (Doc. 113.)

13. On June 22, 2020, counsel for Ayres emailed ISP in another attempt to resolve the deficiencies in ISP's response to the ISP Request. Counsel for Ayres

requested ISP produce a privilege log. Moreover, counsel for Ayres addressed the lack of merit of ISP's broad invocation of the law enforcement investigatory privilege. Accordingly, counsel for Ayres requested ISP supplement its response. (Exhibit D, pp 3-4.)

14.     On July 2, 2020, counsel for the Fire Marshal emailed counsel for Ayres and provided a privilege log (Exhibit F, pp. 4-15)[2] and stated, "My clients have conducted another review of the files and discovered additional documents that we are in the process of reviewing." Further, counsel for the Fire Marshal stated, "[M]y clients are willing to discuss entering into an agreed protective order should that be of interest to you and your client." (Exhibit E, pp. 20-21.)

15.     On July 6, 2020, ISP provided a privilege log to counsel for Ayres, which mostly cited only the law enforcement investigatory privilege. (Exhibit B, pp. 2-13.)

16.     On or about July 10, 2020, the Fire Marshal produced additional documents to Ayres.

17.     On August 6, 2020, counsel for Ayres emailed counsel for the Fire Marshal and stated, "I'm generally agreeable to a protective order if it results in the Fire Marshal producing its file. I suspect the other parties would be as well." (Exhibit E, p. 15.)

18.     On August 26, 2020, ISP advised counsel for Ayres that Deputy Attorney General Nijar was "now representing ISP" and she was "contemplating handling both the ISP and IDHS issues." (Exhibit D, p. 2.)

---

[2] The Fire Marshal's privilege log, other than citing personal information, cited only "Law Enforcement Investigatory".

19.     On August 27, 2020, counsel for the Agencies stated, "The protective order will be from both IDHS and ISP." (Exhibit D, p. 1.)

20.     On September 4, 2020, counsel for the Agencies emailed to counsel for Ayres a proposed protective order. (Exhibit E, p. 12.)

21.     On September 4, 2020, counsel for Ayres emailed counsel for the Agencies and stated, "I'll circulate [the proposed protective order] to the other parties but would also like to understand what documents, of those withheld, would be produced with this order in place." On September 8, 2020, counsel for the Agencies responded, stating, "Documents that include confidential information, as defined and outlined in the draft PO." (Exhibit E, p. 11.)

22.     On October 15, 2020, the Court entered the parties' Stipulated Protective Order (the "Protective Order"), which expressly contemplated the "production of confidential information relating to an investigation jointly conducted by the non-parties, Indiana State Police and Indiana Department of Homeland Security for which special protection from public disclosure and from use for any purpose other than prosecuting this litigation is warranted." (Doc. 122, p. 1.)

23.     On October 30, 2020, counsel for the Agencies emailed counsel for Ayres and stated:

> After conferring with my clients, it is ISP's position that they cannot release all of the redacted and additional information, such as the interviews, as it relates to the suspects, accomplices, associates and their relationships to one another, the victim and the crime in this case. ISP would be willing to enter into a modified protective order where certain information would be released.

To further expedite this process, would you be willing to clarify what information you are seeking to be released that was previously redacted?

(Exhibit E, p. 6.)

24.   On November 2, 2020, counsel for Ayres emailed counsel for the Agencies and stated:

On August 6, 2020, in response to your suggestion for a protective order, I stated I was generally agreeable to a protective order if it resulted in withheld documents being produced. On September 4, 2020, in response to the draft protective order you provided, I emailed you and said I wanted to understand what documents, of those withheld, would be produced with the order in place. On September 8, 2020, in an email, you responded, "Documents that include confidential information, as defined and outlined in the draft PO." Based on your representations, we proceeded with the protective order. All of this took time and, accordingly, resulted in my client, and the other parties, incurring attorneys fees.

Apparently, your clients have now changed their position, deciding the protective order won't result in the production of "documents that include confidential information," as you represented on September 8, 2020. This reversal is not acceptable to my client, nor, I presume, to the other parties.

…

By November 6, 2020, please produce the documents you represent would be produced. If you advise all those documents will not be produced, or if they are not produced by November 6, we will bring the matter to the court's attention, and if another motion to compel is required, we will seek fees.

(Exhibit E, p. 5.)

25.   On November 6, 2020, counsel for the Agencies emailed counsel for Ayres and stated:

Thank you for email. I understand your concerns about how our clients have changed positions.

...

As for information related to possible suspects in a related criminal investigation by ISP and the origin and cause information, our clients still are of the position that this information should not be produced. However, if you are open to it, we would offer this information if we could agree to request in camera review of the information.

Please let me know if your client is open to our suggestions of our production of documents according to a schedule over the few weeks and if they would be open to requesting in camera review of suspect identification information and the origin and cause information.

(Exhibit E, p. 4.)

26.     On November 13, 2020, counsel for Ayres and counsel for the Agencies conferred on the phone. During that conversation, counsel for the Agencies advised that her clients' position had again changed, insomuch as, although a select number of additional documents would be produced, most redactions and withholdings would remain and they would not agree to an in-camera inspection.

27.     The Agencies have since produced an additional round of documents, as well as updated privilege logs. ISP's most recently produced privilege log is attached as Exhibit G, and the Fire Marshal's is attached as Exhibit H (the documents identified on the Agencies' privilege logs are hereinafter referred to as the "Documents").

## <u>Legal Standard</u>

Under Fed. R. Civ. P. 26(b)(1), a party may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. A party may seek an order compelling disclosure when someone on which discovery has been

properly served has failed to respond or has provided evasive or incomplete responses. Fed. R. Civ. P. 37(a)(2), (a)(3).

<u>Legal Analysis</u>

In this matter, Plaintiff has sued Defendants, alleging they rented an apartment to her, which subsequently burned down in a fire. Plaintiff's four young children died in the fire, and she alleges Defendants' negligence caused her children's deaths.

The general consensus among competent individuals is that the fire was incendiary. Even so, Plaintiff has not named as a defendant any person whom she alleges set the fire – presumably because she is unaware of any such individuals. As such, she seeks to hold Defendants, who indisputably had nothing to do with setting the fire, entirely responsible for the passing of her children. Correspondingly, because Defendants don't know who set the fire, they have been unable to name as non-party defendants any potential arsonists.

The Requests seek from the Agencies, among other documents, their investigative materials regarding the fire, including materials regarding its cause and origin and suspects. The Agencies have redacted and withheld from production Documents regarding cause and origin and suspects. The Agencies claim the Documents, while relevant, are protected by the law enforcement investigatory privilege (the "Privilege"). By this Motion, Ayres seeks to compel production of those Documents.

The Agencies purport to have conducted significant investigations regarding who set the fire and how it was set. They have identified suspects and have cause and origin theories. But they have refused to share any such information with the parties to this case, thereby precluding Plaintiff from potentially naming the arsonist(s) as a defendant(s) and leaving Defendants to be the sole parties to answer for the deaths of four children.

The parties to this case can turn nowhere else for the information – regarding suspects and cause and origin – that may be in the Documents. Perhaps the Documents contain nothing useful to the parties. But they might, and the parties are entitled to find out for themselves.

What's more, the Agencies ever-changing position, which has necessitated the filing of this Motion, has been nothing short of obstructionist. For approximately two years, the Fire Marshal did not respond to the Fire Marshal Request, while ISP produced limited materials. Then, once the Agencies were represented by the same counsel, they represented that if the parties entered a protective order concerning the Documents, they would all be produced. The parties executed such an agreed protective order, but the Agencies then reversed course and stated that no suspect or cause and origin materials would be forthcoming.

Still, Ayres continued his efforts to resolve the discovery dispute. The Agencies then proposed an "in camera review of suspect identification information and the origin and cause information." A few weeks later, the Agencies again did an about-face, stating an in-camera review was unsuitable. Left with no further options, Ayres

files this Motion and requests the Court intervene to prevent the Agencies from further obstructing the parties' investigation of the fire that is the subject of this case and from causing Ayres to needlessly incur expense via this discovery dispute.

This Motion presents several issues for the Court's consideration:

a. No matter the merit of the Agencies' claim of the Privilege, given entry of the Protective Order, which the Agencies proposed for the express purpose of producing the Documents, and which will ensure the Documents are maintained as confidential, should the Agencies be compelled to produce the Documents;

b. if entry of the Protective Order does not itself justify compelling the Agencies to produce the Documents, do the needs of the parties, along with the existence of the Protective Order, outweigh the interests of the Agencies, such that the Documents should be produced; and

c. if this Motion is granted, after the Agencies are given an opportunity to be heard, should they be ordered to pay Ayres' expenses, including attorney fees, incurred in connection with the Requests, the First Motion and this Motion?

## A. Overview of Law Enforcement Investigatory Privilege

The Agencies' sole basis for withholding the Documents is their contention that the Privilege exempts them from disclosure. The Privilege is a qualified common law privilege protecting civil as well as criminal law enforcement investigatory files from civil discovery. *Jones v. City of Indianapolis*, 216 F.R.D. 440, 443 (S.D. Ind. 2003) (internal quotation omitted). A finding that a document falls within the scope of the Privilege does not end a court's analysis. *Id.* at 444. The Privilege is not absolute and can be overridden in appropriate cases by the need for the privileged materials. *Id.* "The balancing of that need – the need of the litigant who is seeking privileged

investigative materials – against the harm to the government if the privilege is lifted – is a particularistic and judgmental task." *Id.*

As the party asserting the Privilege, the Agencies have the burden of establishing its merit, particularly with regard to how its application would achieve the Privilege's underlying purpose of not jeopardizing an ongoing investigation. *Jones*, 216 F.R.D. at 444; *United States v. Tsarnaev*, 968 F.3d 24, 74 (1st Cir. 2020). The showing must be specific, not speculative, concrete or conclusory. *Tsarnaev*, 968 F.3d at 74.

## B. The Protective Order Protects the Agencies' Investigatory Interests and Justifies an Order to Compel

The parties entered the Protective Order for a singular reason: the Agencies had requested it and represented that, once entered, they would produce the Documents. After the Protective Order was entered, the Agencies, without explanation, reversed their position. Their reversal was unjustified, and an order to compel is appropriate.

Generally speaking, the Agencies have only briefly addressed why they claim the Privilege exempts the Documents from disclosure and have not at all addressed why the Protective Order has not cured their concerns. On June 12, 2020, counsel for the Agencies claimed the Privilege applied because "this is an active ongoing investigation by the Indiana State Police." Then, on July 2, 2020, counsel for the Agencies stated ISP's investigation was ongoing but it did not matter if it was active or inactive. Further, counsel stated, witnesses' identities had to be protected, as did "important information that will be disclosed through disclosure."

Notably, in that same July 2, 2020 email, and in multiple subsequent communications, counsel for the Agencies indicated that entry of the Protective Order would cure the Agencies' concerns and result in production of the Documents.

To the extent the Agencies' alleged concerns have any merit, which Ayres disputes and will address in detail below, entry of the Protective Order should have alleviated them. The Agencies themselves admitted as much, and their admission should be dispositive for purposes of this Motion.

If the Documents are produced pursuant to the Protective Order, they will be maintained as confidential. The Protective Order defines "Confidential Information" to include the identities of potential suspects or persons of interest, interviews, all evidence, personal identifying information and any other "sensitive information". (Doc. 122, pp. 1, 2.) Therefore, by designating the Documents as Confidential Information, the Agencies' purported investigatory concerns would be cured. Despite reversing their position, and necessitating this Motion, the Agencies have not contended otherwise. Ayres, therefore, requests the Court compel the Agencies to produce the Documents.

**C. Application of the Balancing Test for the Privilege Favors the Needs of the Parties to this Case, not the Interests of the Agencies**

Ayres acknowledges the Documents fall within the Privilege. However, that is not the end of the inquiry, and the need for the privileged materials in this case is significant and, particularly with the Protective Order in place, far outweighs any harm to the Agencies if the Documents are produced.

To determine if the Privilege should prevent disclosure of the Documents, the Court is to consider ten factors:

1. the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information;

2. the impact upon persons who have given information of having their identities disclosed;

3. the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure;

4. whether the information sought is factual data or evaluative summary;

5. whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question;

6. whether the investigation has been completed;

7. whether any interdepartmental disciplinary proceedings have arisen or may arise from the investigation;

8. whether the plaintiff's suit is nonfrivolous and brought in good faith;

9. whether the information sought is available through other discovery or from other sources; and

10. the importance of the information sought to the case.

*Jones*, 216 F.R.D. at 444.

As an initial matter, the Agencies have failed to justify their position. They have stated little more than there is an "ongoing" investigation (unclear if it is active

or inactive or how an ongoing investigation could be inactive) and that witnesses' identities, as well as other unspecified "important information", needs to be protected. Weighed against the tragic facts of this case, and its high stakes, as well as entry of the Protective Order, the Agencies have fallen well short of carrying their burden.

Moreover, because the Documents would be designated as Confidential Information under the Protective Order, and therefore their disclosure unknown to the public, there can be no real concern of discouraging citizens from giving the government information (factor no. 1), chilling governmental self-evaluation and program improvement (factor no. 3) or impacting any investigation (factor no. 6).

Further, Plaintiff is justifiably pursuing a civil remedy for the death of her four children, even though Defendants strongly believe in their liability defenses and intensely disagree with Plaintiff naming Ayres and Troy Helderman, the members of Plaintiff's landlord Birch Tree, as defendants (factor no. 8). And, while Ayres cannot be certain of what is actually contained in the Documents, there is good reason to presume they include information that is of extraordinary significance both to Defendants' defenses and Plaintiff's claims (factor no. 10.) Indeed, the Agencies' privilege logs are replete with entries regarding suspects and cause and origin.

The impact on the persons whose identifies are disclosed (factor no. 2) should be assigned little to no weight. Plaintiff and Defendants alike deserve to have all information regarding the fire available to them to prosecute and defend this matter, respectively. And, in any case, the Protective Order would protect the individuals' identities from public disclosure.

Moreover, Ayres, and for that matter Birch Tree, are not actual or potential defendants in any criminal proceeding (factor no. 5).

As for whether the Agencies' investigation is ongoing (factor no. 6), while counsel for the Agencies has contended it is (at least for ISP), this claim is dubious. The Fire Marshal's privilege log references no documents created any more recently than April 2017, while the two most recent documents on ISP's privilege log are dated in January 2019, with the overwhelming majority being more than two years old. Thus, even if the Court gives credence to the Agencies' contention that their investigation is ongoing, Ayres submits that this factor, weighed against the others, and considering entry of the Protective Order, should be given little weight.

Lastly, the Documents are not available from any source other than the Agencies, and therefore factor no. 9 also weighs in favor of disclosure. [3]

In sum, the balancing test regarding the Privilege weighs heavily in favor of disclosure of the Documents. And the significance of the Protective Order, requested by the Agencies to cure their concerns about producing the Documents, cannot be overstated. Ayres, therefore, requests the Court compel the Agencies to produce the Documents.

### D. Case Law Supports Entry of an Order to Compel

In *Preston v. Unknown Chicago Police Officer No. 1*, No. 10 C 0136, 2010 WL 3273711 (N.D. Ill. 2010), the court addressed non-party Independent Police Review

---

[3] The remaining factors – whether the information is factual data or executive summary (factor no. 4) and whether any interdepartmental disciplinary proceedings have been brought (factor no. 7) – are not applicable to the present dispute.

Authority's ("IPRA") claim of the Privilege. The plaintiff alleged he had been assaulted by a yet unidentified police officer, while other yet unidentified officers looked on, and he sought to obtain documents from IPRA to discover the officers' identities. *Id.* at *1-2. The IPRA resisted producing the documents, claiming the Privilege, due to an ongoing investigation and potential criminal charges against the officers. However, as the court stated, "[t]he only specific issue raised by IPRA…is that some witnesses and potential defendant officers have not yet been interviewed, and if information about the investigation became public, future interviews with these individuals could become tainted." *Id.* Rejecting this argument, the court held:

> [T]his precise argument…was made in a similar case before this district. In *Santiago v. City of Chicago*,[4] Magistrate Judge Nolan found that releasing investigation files under "attorneys' eyes only" protective order would prevent disclosure of sensitive information to witnesses not yet interviewed. Like in *Santiago*, permitting Preston's counsel to view the investigation files on an attorneys' eyes only basis will allow for discovery of potentially relevant information and at the same time, shield witness statements from disclosure to the accused officers and other witnesses who have not yet been interviewed as well as protect the privacy interests of individuals involved in the investigation and the confidentiality of sources and witnesses.

*Id.*

In *United States v. Tsarnaev*, in proceedings before the district court, the defendant had repeatedly asked the judge to make the government produce all reports and recordings of the defendant's statements about the commission of a crime, unrelated to the then instant proceeding, in which he had been involved. 968 F.3d at 64-65. The government had resisted, and the district court had agreed, on the basis

---

[4] No. 09 C 3137, 2010 WL 1257780 (N.D. Ill. 2010).

of the Privilege. *Id.* On appeal, the First Circuit, noting that the government had borne the burden of establishing application of the Privilege, in a specific manner, and holding the district court had erred, stated, "[T]he government offered no specific ways in which disclosure would have endangered the ongoing Waltham-murders investigation – particularly if the disclosure occurred under a protective order." *Id.* at 74. (citing *Ass'n for Reduction of Violence v. Hall*, 734 F.2d 63, 66 (1st Cir. 1984) ("emphasizing that where possible, a court should accommodate a moving party's interest in disclosure through excising privileged sections, editing or summarizing documents, or okaying discovery subject to a protective order") (parenthetical quoted from *Tsarnaev* opinion); *see also Davis v. Carmel Clay Schools*, 282 F.R.D. 201 (S.D. Ind. 2012) (rejecting prosecuting attorney's office and police department's claim of Privilege, where a high school student and his parents sued a school district for incidents of bullying and harassment, and sought investigatory materials, as materials were not available from other sources, the information sought was critical to plaintiffs' case, the plaintiffs were not actual or potential defendants in a criminal case and the non-parties resisting discovery had failed to meet their burden with any level of specificity).

Conversely, in *Jones v. City of Indianapolis*, the court sided with the defendants on their claim of the Privilege. 216 F.R.D. at 441. In *Jones*, an individual had been apprehended for fleeing the police and, having been transferred in a paddy wagon, died upon his arrival to a hospital. *Id.* The individual's mother, the plaintiff, sued the police, the City of Indianapolis and several police officers as a result. *Id.* In

discovery, the plaintiff sought to depose police investigators and obtain documents about the department's investigation. *Id.* The defendants, invoking the privilege, resisted. *Id.*

In *Jones*, the police officer defendants themselves were the subject of the investigatory materials sought by the plaintiff. 216 F.R.D. at 444. Moreover, there was apparently no protective order in place, pursuant to which the materials may have been kept confidential, and media attention on the incident had been intense. *Id.* Therefore, noting the chilling effect on past and future witnesses and informants, the ongoing investigation against the police officer defendants and the prospect of interdepartmental disciplinary proceedings against them and the possibility that the information sought was available from other sources, the court found the Privilege applicable. *Id.* at 444-48.

The situation in the present matter is analogous to *Preston*, *Santiago* and *Tsarnaev*, among other cases, and distinguishable from *Jones*. The most significant analog among this case those cited herein, other than *Jones*, is the existence of protective orders. The provisions of these documents plainly cure the concerns of the governmental actors. Indeed, the Agencies have not articulated, in their many communications to Ayres, why, in light of the Protective Order, their concerns remain.

In *Jones*, on the other hand, a significant internal police investigation against the police officer defendants themselves was ongoing, there was apparently no prospect of maintaining the discovery sought as confidential and interdepartmental

disciplinary proceedings, and even criminal charges, were distinctly possible against the defendant police officers. No similar facts are present here. Therefore, with case law and the balancing factors on the side of disclosure, Ayres requests the Court compel the Agencies to produce the Documents.

### E. Order for Agencies to Pay Ayres' Expenses

Rule 37(a)(5)(A) provides that if a motion to compel is granted, "the court must…require the party or deponent whose conduct necessitated the motion…to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees", unless "(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust."

If the Court grants this Motion, Ayres will further detail his assertion that the Agencies should be ordered to pay his expenses. Suffice to say, Ayres has repeatedly attempted in good faith, without court action, to obtain the Documents; the Agencies' position is substantially unjustified, considering they asked for the Protective Order in order to Produce the documents, and then reversed their position, and considering the Privilege's balancing test weighs heavily against them; and no other circumstances make an award of expenses unjust.

Wherefore, Defendant Joshua Ayres requests that the Court:

    a. enter an order compelling the Agencies to respond fully to the Requests within 14 days of the date of the order;

b. if the Court enters an order compelling the Agencies to respond to the Requests, Ayres requests that the Court, after giving the Agencies an opportunity to be heard, order them to pay Ayres' expenses, including attorney fees incurred in connection with the Requests and this Motion; and

c. grant all other appropriate relief.

Respectfully submitted,

*/s/ Ian Goodman*
Jonathan Bont
Ian Goodman
Paganelli Law Group
10401 N. Meridian St., Suite 450
Indianapolis, IN 46290
317.550.1855
jon@paganelligroup.com
ian@paganelligroup.com

*Counsel for Defendant Joshua Ayres*

## CERTIFICATE OF SERVICE

I certify that the foregoing document was filed on December 10, 2020, through the Court's CM/ECF system. Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

I further certify that on December 10, 2020, a copy of the foregoing was served via email to the following counsel of the Fire Marshal and Indiana State Police:

Parvinder K. Nijjar
Deputy Attorney General
Administrative and Regulatory Enforcement Litigation
Office of Attorney General Curtis Hill

302 W. Washington Street
IGCS - 5th Floor
Indianapolis, IN 46204
p: 317-234-2339
f: 317-232-7979
Parvinder.Nijjar@atg.in.gov

*/s/ Ian P. Goodman*
Ian P. Goodman